UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY CRAWFORD, et al.,

                Plaintiffs,

v.

FCA US LLC,

                Defendant.

_____/

Case No. 2:20-cv-12341

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN
PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS [25] AND GRANTING PLAINTIFFS'
MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY [30]**

Plaintiffs are owners of Dodge Ram pickup trucks who brought a class action complaint against FCA US for alleged defects in their trucks' Exhaust Gas Recirculation ("EGR") coolers. ECF 22, PgID 2191–92. FCA moved to dismiss the complaint, ECF 25, and Plaintiffs responded, ECF 26. Plaintiffs then moved for leave to file supplemental authority. ECF 30. The Court closely reviewed the detailed briefing and finds that a hearing is unnecessary to resolve the motions. *See* E.D. Mich. LR 7.1(f). For the following reasons, the Court will grant the motion for leave to file supplemental authority, and grant in part and deny in part the motion to dismiss.

## BACKGROUND[1]

In 2014, FCA "designed, manufactured, distributed, and sold . . . Dodge Ram 1500 and 1500 Classic vehicles equipped with 3.0L EcoDiesel engines". ECF 22, PgID 2191. Plaintiffs alleged that the EGR coolers "are susceptible to thermal fatigue, leading the coolers to crack over time and leak coolant" and that the cracks and leaks allegedly could lead to fire breaking out in the trucks. *Id.* at 2192. The defect also allegedly caused the trucks to lose power. *Id.*

In 2019, FCA announced a voluntary recall of trucks equipped with the EGR coolers that "impacted the 2014–2019 model year Ram 1500 and 1500 Classic trucks equipped with the 3.0L EcoDiesel engine." *Id.* at 2193–94. But Plaintiffs alleged that the recall was too little and too late, and that FCA "knew of the defect *before* marketing and selling the vehicles in 2014." *Id.* at 2194 (emphasis in original).

## LEGAL STANDARD

When the Court analyzes a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in favor of the non-moving party. *Bassett*, 528 F.3d at 430. The Court may grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603,

---

[1] Because the Court must view all facts in the light most favorable to the nonmoving party, *see Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008), the Court's recitation does not constitute a finding of fact.

609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true," the Court must dismiss it. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## DISCUSSION

To begin, the Court will grant Plaintiffs' motion for leave to file notice of supplemental authority. ECF 30. The Court will now address the pending motion to dismiss. ECF 25.

I.   <u>Standing</u>

FCA argued that many of the Plaintiffs lack standing for four specific reasons. ECF 25, PgID 3454–61. First, some Plaintiffs failed to allege an injury in fact. *Id.* at 3454–57. Second, all Plaintiffs cannot establish standing based on an overpayment theory. *Id.* at 3458–60. Third, all Plaintiffs lacked standing to assert a nationwide fraudulent concealment claim. *Id.* at 3461. And lastly, all Plaintiffs lacked standing to assert any claim related to 2019 model year trucks. *Id.*

To establish standing, Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted).

3

A.    *Plaintiffs' Alleged Injury in Fact*

FCA first argued that Plaintiffs whose trucks never malfunctioned or who participated in the recall lack standing. ECF 25, PgID 3454–57. But the Court disagrees and finds that each group has standing to sue.

For the first group, FCA argued that Plaintiffs Anderson, Deale, Ewing, Mault, and Vanderhulst lacked standing because they did not "allege that they ha[d] ever experienced any issues with their" trucks. ECF 25, PgID 3454. But even without experiencing an issue, Plaintiffs were still damaged "[b]ecause all [truck] owners were injured at the point of sale upon paying a premium price for the [truck] as designed, even those owners who have not experienced a [cooling] problem are properly included within the certified class." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 857 (6th Cir. 2013). Although the plaintiffs in *Whirlpool* resolved that owners had an injury at the class certification stage, *id.*, courts have applied the *Whirlpool* logic to analyze standing at the motion to dismiss stage. *Storey v. Attends Healthcare Prods. Inc.*, No. 15-cv-13577, 2016 WL 3125210, at *4 (E.D. Mich. June 3, 2016). Thus, Plaintiffs whose trucks never malfunctioned have standing based on the injury of paying a higher price for a truck that they "would have paid less for [] had FCA disclosed the defective nature." ECF 22, PgID 2323.

The second group are those Plaintiffs that participated in the recall. As to this group, FCA argued that they lacked standing because "the 'repair of the [part] that the plaintiffs received removed the defect.'" ECF 25, PgID 3456 (quoting *Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 378–79 (6th Cir. 2015)). But this case differs

from what occurred in *Hadley*. The *Hadley* plaintiffs "did not plead any facts in support of the allegation that they suffered a diminished-value injury." 624 F. App'x at 378. Instead, here, Plaintiffs alleged that they were injured because they would have paid less for the truck had they known about the defect. ECF 22, PgID 2323. Thus, "because Plaintiffs claim their injury occurred at the point of purchase, and that the recall did not necessarily remediate the loss caused to Plaintiffs by their allegedly" having to pay more for the trucks "based on [Defendant's] alleged misrepresentations, *Hadley* does not plainly bar Plaintiffs' claim[s]." *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 695 (E.D. Mich. 2020) (Berg, J.). Because of the form of their pleadings, Plaintiffs who participated in the recall have standing.

### B.   *Plaintiffs' Overpayment Theory*

FCA also argued that Plaintiffs' claims about overpaying for trucks must fail for lack of injury because the "EGR cooler degradation occurred only 'over time' with use." ECF 25, PgID 3458 (citing ECF 22, PgID 2368, 2774) (emphasis omitted). But the Sixth Circuit's decision in *Whirlpool* again forecloses the argument. The Sixth Circuit allowed the *Whirlpool* class to proceed because all the appliance owners at issue "were injured at the point of sale upon paying a premium price for the [appliance] as designed, even those owners who have not experienced a [] problem are properly included within the certified class." 722 F.3d at 857. The same reasoning must apply here because, as discussed earlier, Plaintiffs alleged that they were injured when they paid "a higher price for the Class Vehicles compared to what they

would have paid for non-defective vehicles." ECF 22, PgID 2323; *see also Storey*, 2016 WL 3125210, at *4 (applying *Whirlpool* to a motion to dismiss standing analysis).

What is more, FCA's recall does not bar Plaintiffs' theory of recovery. Even if the recall were effective, Plaintiffs alleged that they were injured when they bought their trucks. *See* ECF 22, PgID 2323. And that kind of overpayment allegation is not barred in the Sixth Circuit. *See Raymo*, 475 F. Supp. 3d at 695.

    C.    *Standing to Bring the Nationwide Fraudulent Concealment Claim*

Plaintiffs asserted a fraudulent concealment claim on behalf of a nationwide class, ECF 22, PgID 2373–77, but put forth factual allegations on behalf of named Plaintiffs in only twenty-four states, *id.* at 2203–2321. "Although class-certification analysis may precede standing analysis when 'the class certification issue is logically antecedent to the standing issue,'" courts in the Eastern District of Michigan have "held that 'the logically antecedent language should be construed in a manner that permits consideration of the standing issue . . . prior to class certification.'" *Wozniak v. Ford Motor Co.*, No. 17-cv-12794, 2019 WL 108845, at *1 (E.D. Mich. Jan. 4, 2019) (Murphy, J.) (cleaned up) (quoting *Smith v. Lawyers Title Ins. Co.*, No. 07-12124, 2009 WL 514210, at *2 (E.D. Mich. Mar. 2, 2009)). Like *Wozniak* and *Smith*, Plaintiffs in the present case "do not allege injuries in states other than their own or base their claims on the application of other states' laws." *Id.* Thus, the nationwide fraudulent concealment claim fails.[2]

---

[2] Plaintiffs' state-specific fraudulent concealment claims are unaffected by the ruling here.

### D.   *Standing to Bring Claims Related to 2019 Model Year Trucks*

Last, the Court will dismiss all claims relating to 2019 model year trucks. Plaintiffs agree that they do not own or lease a 2019 model year truck. ECF 26, PgID 3540. Because "none of the Plaintiffs claim to have purchased or leased a truck from [the 2019] model year" Plaintiffs therefore lack standing to bring claims based on those specific trucks. *Raymo*, 475 F.3d at 696 (finding that claims relating to a 2017 model year truck could not proceed because no plaintiff owned a 2017 model year truck).

## II.   Fraud Claims

FCA next moved to dismiss Plaintiffs' fraudulent concealment and statutory consumer protection claims as improperly pleaded. ECF 25, PgID 3461–74. FCA first argued that the common law and statutory fraud claims do not meet the heightened pleadings standard of Federal Rule of Civil Procedure 9(b).[3] *Id.* at 3461–62. Second, FCA asserted that Plaintiffs' remaining fraud claims about the trucks' durability, reliability, and being free from defect were mere puffery. ECF 25, PgID 3464. The Court will first examine the fraud claims under Rule 9, and then determine whether the remaining claims are puffery.

### A.   *Rule 9 Pleading Standard*

To plead fraud, Federal Rule of Civil Procedure 9 "requires [] plaintiff[s]: (1) to specify the allegedly fraudulent statements; (2) identify the speaker; (3) to plead

---

[3] Plaintiffs do not contest that Rule 9's heightened pleading standard applies to the state specific fraudulent concealment and consumer protection claims. *See* ECF 26, PgID 3541–52.

when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (citation omitted).

### 1.   *Statements Regarding Recall Remedy*

First, Plaintiffs alleged that after the first recall announcement in October 2019, "FCA told affected consumers that 'the remedy for this condition is not currently available' but that the company was 'making every effort to finalize the remedy as quickly as possible.'" ECF 22, PgID 2195 (quoting ECF 22-4, PgID 2774). FCA also told affected customers "that they would be notified 'when the remedy is available. Once you receive your follow-up notice, simply contact your . . . dealer right away to schedule a service appointment.'" *Id.* (omission in original) (quoting ECF 22-4, PgID 2774).

Plaintiffs claim that those statements were fraudulent because they created an expectation that a "fix would arrive soon," that it would be widely available, and that FCA would contact customers when it became available. *Id.* But FCA, notably, never said that the statement would arrive "soon"; they said that it would arrive "as quickly as possible." *Id.* at 2200 n.23; ECF 22-4, PgID 2774. And it is implausible that FCA meant the repair would come "soon" because the "as possible" modifies the "quickly" part of the statement.

Regardless, Plaintiffs claim that the statement was indeed fraudulent because FCA "knew at the time, but failed to disclose, that the part it would identify as an 'improved' 'fix' was a part it was already installing in vehicles, but was not an

improvement or fix." *Id.* at 2195. But Plaintiffs' later allegations cut against their own arguments. In fact, Plaintiffs alleged that FCA "announced in approximately April 2020 that it would conduct a recall 'on all affected vehicles to replace the EGR cooler with a new EGR cooler (part number 68483334AA) that is not susceptible to thermal fatigue.'" *Id.* at 2198 (quoting ECF 22-8, PgID 2870). Thus, based on the complaint, FCA created a "fix," just as it had promised.

Plaintiffs try to avoid the inconsistency by countering that dealers told customers the 68483334AA part was an "interim fix," and that the "fix" was available before the October 2019 recall announcement. *Id.* at 2199, 2277 (Plaintiff Felker's allegation that a FCA dealer told him the 68483334AA part was a "redesigned" part). But the two arguments do not save the claim.

The fact that FCA had a part before it determined that the specific part fixed the EGR problem does not in itself create a false statement. FCA could have very well determined that a part, which existed before the recall, solved the problems at issue after the recall had occurred. And, Plaintiffs' allegation that FCA "knew at the time, but failed to disclose, that the part it would identify as an 'improved' 'fix' was a part it was already installing in trucks, but was not an improvement or fix," ECF 22, PgID 2195, does not meet the Rule 9 pleading standard. The Sixth Circuit recently held that although "complaints grounding claims on 'information and belief' can survive a motion to dismiss, they 'must set forth a factual basis for such belief,' and plaintiffs cannot 'base claims of fraud on speculation and conclusory allegations.'" *Smith v. General Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021) (quotation omitted).

Here, Plaintiffs merely allege that FCA "knew" that the statement was false because it was installing the part before the recall and because it told customers that a remedy for the problem was unavailable at that time. ECF 22, PgID 2353. Put simply, the allegation is conclusory. It neither shows that FCA knew the part would solve the nationwide recall once the recall started nor that FCA knew the part would actually solve the problem. Instead, it shows that a part existed, which FCA later identified as the solution to the EGR problem. Thus, Plaintiffs' first allegation of fraud lacks a claim of falsity and the Court will dismiss it.

### 2. *Statements Regarding Coolant Levels*

Second, Plaintiffs alleged that consumers "were advised in the interim to 'monitor their coolant levels' and contact their dealers if the levels were 'consistently low.'" *Id.* at 2196 (quoting 22-4, PgID 2774). That warning, according to Plaintiffs, "created the impression that consumer monitoring would be adequate to mitigate the danger, and that if a customer made a dealership aware of low coolant levels, then contacting the dealership would enable the customer to obtain some remedy." *Id.* Plaintiffs then alleged that "if consumers add coolant to their truck" it could have potentially made the problem worse. *Id.* But Plaintiffs never alleged that FCA told customers to add coolant; FCA simply instructed customers to monitor the coolant and contact a dealer if the coolant was low. FCA made no false statement because it did not promise any fix. The fraud claim therefore fails under Rule 9.

### 3. Failure to Disclose Long-Term Damage

Third, Plaintiffs alleged that FCA "failed to disclose the long term damage to affected trucks from the EGR defect." *Id.* at 2196. Plaintiffs alleged that the EGR defect caused the trucks to burn coolant and damage the truck's emission control catalysts." *Id.* Although neither party briefed the specific claim, Plaintiffs never alleged that they suffered any damage because of the EGR defect. A fraud claim requires Plaintiffs to allege that they suffered damages. *Spokeo, Inc.*, 136 S. Ct. at 1547; *see also Power & Tele. Supply Co., Inc. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006) (holding that a traditional fraud claim requires a plaintiff to have suffered damages). Because Plaintiffs never alleged that they suffered damage based on burning extra coolant or damage to class trucks' emission control catalysts, the third fraud claim fails.

### 4. Notices About Fixes for Specific Trucks

Fourth, Plaintiffs alleged that FCA sent notices to "certain owners and lessees letting them know that a fix was available for their specific vehicle." ECF 22, PgID 2197 (quoting ECF 22-5, PgID 2777). "The notice indicated that 'it is extremely important to take steps now to repair your vehicle to ensure the safety of your passengers.'" *Id.* (quoting ECF 22-5, PgID 2777). And the notice allegedly "misrepresented that a fix was available." *Id.* But Plaintiffs' complaint once again cuts against their claims. Plaintiffs, for instance, alleged that "affected owners and lessees are still routinely being denied a fix *due to part unavailability*." *Id.* (emphasis added). Thus, FCA's statement about the availability of a *fix* is not false because FCA

advised of a fix and allegedly asserted it was hampered by the unavailability of parts. And Plaintiffs alleged that they were denied the fix because the parts were unavailable—not because FCA did not know how to fix their trucks. *Id.* At bottom, the fix itself was available, and supply chain issues about the part's availability did not make FCA's statement about a fix false.

### 5. *Statements About the Supply of Parts*

Fifth, Plaintiffs alleged that in April 2020 FCA announced that "it would conduct a recall 'on all affected trucks to replace the EGR cooler with a new EGR cooler . . . that is not susceptible to thermal fatigue.'" *Id.* at 2198 (alteration added) (quoting ECF 22-8, PgID 2870). FCA also "indicated the repair must be made on all unsold vehicles before retail delivery." *Id.* But FCA allegedly told its dealers "that 'part supply is extremely limited' and that, as a result, the EGR cooler should only be replaced 'if the part has failed.'" *Id.* (quoting ECF 22-9, PgID 2872). Put differently, the allegation contains no suggestion that FCA made a false statement to consumers. Two reasons support the conclusion. First, the complaint itself alleged that FCA began repairing the EGR coolers after the April 2020 announcement and thus, the statement that FCA would replace the EGR coolers on all trucks could not be false. *Id.* at 2200. Second, Plaintiffs never alleged that FCA ever sold an unrepaired truck after the April 2020 announcement. *Id.* at 2198; *see also* ECF 26, PgID 3542 (Plaintiffs' response fails to suggest that FCA ever sold an unrepaired truck after April 2020).

And, Plaintiffs' contention that FCA misrepresented "all consumers" could have their trucks fixed and that FCA "is making repair determinations based on part scarcity" also lacks a falsehood. *Id.* at 2198. Granted, FCA prioritized repairs and offered loaner vehicles "until such time that the remedy for the recall [was] available" to customers whose trucks do "not currently need any repairs." ECF 22, PgID 2198–99 (emphasis omitted). But that fact does not mean every consumer would not receive repairs or that "the defect was not present in all trucks and contradicted FCA's promise to fix all impacted trucks." ECF 26, PgID 3542. Rather, it means that, due to the laws of supply and demand, there were not enough parts to fix every truck at one time. Plaintiffs' fifth claim therefore lacks a falsehood.[4]

### 6. *Statements About Part Number*

Plaintiffs' sixth and seventh allegations of fraud are intertwined. Allegedly, FCA first "replac[ed] failed EGR coolers with part number 68483334AA, a part available prior to the recall" but then, in May 2020, "identified a different part as the recall fix: part number CSNDVB11AB." *Id.* at 2199–2200. And, at the same time, FCA "indicated to consumers that there was no fix" for the EGR defect, it allegedly

---

[4] Plaintiffs also passingly refer to FCA falsely stating that Plaintiffs could obtain loaner vehicles from dealerships if the repairs could not be made right away. ECF 22, PgID 2198–99; ECF 22-9, PgID 2872. But Plaintiffs admit that the statement was made to dealerships and not to consumers. ECF 22, PgID 2198 (noting that the statement was made in an "instruction to dealerships."). Because the statements were not made to consumers, Plaintiffs cannot prove that they "relied" on the false statement. *See Dardini v. Chase*, No. 12-cv-12559, 2013 WL 1747825, at *4 (E.D. Mich. Apr. 23, 2013) (explaining that under Rule 9 a plaintiff must prove that he or she relied on the fraudulent statement.). The statements about loaner vehicles cannot support an actionable fraud claim.

"was actively replacing failed EGR coolers with part number 68483334AA." *Id.* at 2199. FCA later "told impacted consumers" "that a defect free, redesigned, improved part was available—i.e., the same part number 68483334AA." *Id.* But Plaintiffs never alleged that FCA knew part 68483334AA was the "fix" for the defect before its announcement and thus Plaintiffs failed to plead a falsehood.

Last, there appears to be some confusion between the part numbers. As noted above, the complaint alleged that the CSNDVB11AB part was different from the 68483334AA part, and that the 68483334AA part was just an "interim fix." *Id.* at 2354–55. But FCA argued that the parts are the same, and that the CSNDVB11AB is merely the name assigned to part 68483334AA because of the recall. ECF 25, PgID 3456–57. FCA also noted that "only two consumers have apparently been told by third-party dealerships that they had received an 'interim' part." *Id.* at 3457 n.7 (citing ECF 22, PgID 2354–55). At its core, Plaintiffs' claim that the numbers for both parts means the parts are in fact different is based on an "online search" that found two references "on owner blogs." ECF 22, PgID 2354. Put simply, the statement that the parts are somehow different is "unsupported by any additional facts, [and] is just the sort of conclusory allegation that is insufficient to survive a motion to dismiss." *Farnsworth v. Nationstar Mortg., LLC*, 569 F. App'x 421, 429 (6th Cir. 2014). In sum, Plaintiffs inadequately pleaded that the allegedly fraudulent statements can survive Rule 9's heightened pleading standard.

B.      Puffery

Plaintiffs alleged that FCA also made a fraudulent statement when it referred to the class trucks as having "enhanced safety, reliability, and durability compared to other vehicles on the American market." ECF 22, PgID 2221. FCA responded that the statements were puffery and cannot be the basis of fraud claims. ECF 25, PgID 3464. "'Inherently subjective' statements cannot form the basis of a fraud action." *Raymo*, 475 F. Supp. 3d at 705–06 (quoting *Counts v. General Motors, LLC*, 237 F. Supp. 3d 572, 598 (E.D. Mich. 2017)). Indeed, "[s]tatements about the cleanliness of an engine or emissions system, for example . . . have been categorized by courts . . . as puffery." *Id.* at 705. Courts in the Eastern District of Michigan have specifically categorized statements about a vehicle's reliability, durability, and safety as puffery. *Id.* at 706 (reliability); *Beck v. FCA*, 273 F. Supp. 3d 735, 749 (E.D. Mich. 2017) (durability); *Counts*, 237 F. Supp. 3d at 598 (safety). Because safety, durability, and reliability are mere puffery, those statements cannot support a fraud claim.

C.      Conclusion

The fraud and consumer protection claims in Plaintiffs' complaint are either insufficiently pleaded under Rule 9, or puffery that cannot support a fraud claim. The Court will therefore dismiss all the fraud and consumer protection claims.

III.   <u>Warranty Claims</u>

FCA next argued that the Court should dismiss Plaintiffs' warranty claims for three reasons. First, Defendant argues Plaintiffs inadequately pleaded the implied warranty claims. ECF 25, PgID 3480–83. Second, they maintain Plaintiffs' express

and implied warranty claims are defective. *Id.* at 3483–85. And third, Defendant asserts Plaintiffs failed to state express warranty claims under the Magnuson-Moss Warranty Act ("MMWA"). *Id.* at 3478–80. The Court will review each argument in turn.

### A.    *Implied Warranty Claims*

Under Uniform Commercial Code ("U.C.C.") § 2-314(1), a warranty of merchantability is "implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." FCA argues that the Court should dismiss the implied warranty claims under several states' laws because Plaintiffs lack privity with FCA. ECF 25, PgID 3481–82. FCA also claims that Plaintiffs Anderson, Deale, Ewing, Gulbranson, Mault, and Vanderhulst cannot establish a breach of the implied warranty of merchantability because they did not allegedly experience any issues with their trucks. *Id.* at 3482–83.

### 1.    *Privity*

FCA moved to dismiss the implied warranty claims under Arizona, Connecticut, Idaho, Illinois, Oregon, Tennessee, Washington, and Wisconsin law because those eight states require privity for an implied warranty claim, which Plaintiffs failed to show between FCA and Plaintiffs. *Id.* at 3481. Admittedly, Plaintiffs do not dispute that they bought their trucks from dealers and not directly from FCA. ECF 26, PgID 3563–64. The Court must therefore review the states' laws to determine whether their laws require privity.

Recently, a court in the Eastern District of Michigan dismissed implied warranty claims based on Arizona, Connecticut, Idaho, Washington, and Wisconsin law because those states require privity to state an implied warranty claim. *Francis v. General Motors, LLC*, 504 F. Supp. 3d 659, 676–78 (E.D. Mich. 2020) (collecting cases). Because that reasoning is sound, the Court will adopt it and dismiss the implied warranty claims under Arizona, Connecticut, Idaho, Washington, and Wisconsin law.

But, under Illinois law, *Francis* found that implied warranty claims cannot be dismissed at the pleadings stage based on lack of privity. *Id.* at 677 (citing *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 595 (E.D. Mich. 2018)) ("Under Illinois law, fact questions arise where a manufacturer has issued an express limited warranty extending to all buyers or owners which preclude adjudication of a privity defense at the pleadings stage."). The same is true for implied warranty claims brought under Tennessee law. *Id.* (citing *Bishop v. DeLaval Inc.*, 466 F. Supp. 3d 1016, 1024 (W.D. Mo. 2020)). The Court again respects the wisdom of those decisions and will therefore follow them. The Court will decline to dismiss the implied warranty claims under Illinois and Tennessee law.

In Oregon, courts "restrict recovery under an implied warranty theory to injuries suffered by a person within the distributive chain." *Torch v. Windsor Surry Co.*, No. 3:17-cv-00918, 2019 WL 6709379, at *11 n.5 (D. Or. Dec. 9, 2019). Plaintiff Maier alleged that he bought his truck from an Oregon dealer. ECF 22, PgID 2270. Thus, he alleged that he participated in the distributive chain (i.e., he bought the

truck from a FCA dealer). On that basis, the Court will not dismiss the Oregon implied warranty claim.

Overall, since factual questions about privity exist, the Court cannot dismiss the Illinois, Tennessee, or Oregon implied warranty claims. The Court will, however, dismiss the implied warranty claims under Arizona, Connecticut, Idaho, Washington, and Wisconsin law.

### 2. *Plaintiffs Who Have Not Experienced Injury*

Next, FCA moved to dismiss the implied warranty claims for Plaintiffs Anderson, Deale, Ewing, Gulbranson, Mault, and Vanderhulst because those Plaintiffs suffered no alleged injuries. ECF 25, PgID 3482–83.[5] But Plaintiffs argue that the Court should not dismiss those implied warranty claims because they were injured once they bought trucks that did not operate or could not operate as designed. ECF 26, PgID 3565. As to the Plaintiffs at issue, Plaintiff Deale's claims arise under both Maryland and North Carolina law, Plaintiff Ewing's remaining claim arises under Iowa law, Plaintiff Gulbranson's claim arises under Minnesota law, Plaintiff Mault's remaining claim arises under Utah law, and Plaintiff Vanderhulst's claim arises under California law. ECF 22, PgID 2268, 2313, 2256, 2284, 2225. The Court must therefore determine whether injury is required under those states' laws.

---

[5] Plaintiff Anderson asserted a claim under Wisconsin law, ECF 22, PgID 2310, Plaintiff Ewing asserted his claim in part under Wisconsin law, *id.* at 2312, and Plaintiff Mault asserted his claim in part under Idaho law, *id.* at 2284. Because the Court already dismissed the implied warranty claims under Wisconsin and Idaho law, the Court need not readdress the issues based on those states' laws.

In Maryland, "the injury" under an implied warranty claim "arises when the seller fails to tender the goods in a manner that is fit for ordinary purposes, and the damages are the difference between what the buyer would have received if he or she received the full measure of the bargain, which the seller warranted, and what the buyer received in less-than-fit goods." *Lloyd v. General Motors Co.*, 916 A.2d 257, 287 (Md. 2007). The same reasoning applies to implied warranty claims under Minnesota law. The Minnesota Supreme Court held that "those who purchase, use, or otherwise acquire warranted goods have standing to sue for purely economic losses. Those who lack any such connection to the warranted goods must demonstrate physical injury or property damage before economic losses are recoverable." *See Kenetic Co. v. Medtronic, Inc.,* 672 F. Supp. 2d 933, 947 (D. Minn. 2009) (quoting *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 565 N.W. 2d 16, 21 (Minn. 1997)). At bottom, a purchaser of warranted goods under Maryland and Minnesota law has standing to sue for economic loss based on a decrease in value, and a non-purchaser must show physical injury before bringing a claim for economic loss. Likewise, Utah and Iowa law permit a plaintiff to recover for economic losses based on "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Simantob v. Mullican Flooring, L.P.*, 527 F. App'x 799, 803 (10th Cir. 2013) (quotations omitted) (interpreting Utah law); *Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.*, 880 N.W. 2d 212, 218 (Iowa 2016) (Iowa law "provides the buyer's 'damages for breach of warranty is the difference . . . between the value of the goods accepted and the value they would have

if they had been as warranted.'") (cleaned up). Based on that reasoning, the Court will not dismiss Plaintiffs Deale's (Maryland), Ewing's (Iowa), Gulbranson's (Minnesota), and Mault's (Utah) implied warranty claims.

But the Court will dismiss the implied warranty claim under North Carolina law and Plaintiff Vanderhulst's implied warranty claim under California law. Plaintiff Vanderhulst, a California resident who bought and used his truck in California, never alleged that he suffered any defect or problems with his car. *See* ECF 22, PgID 2225–29. And absent an actual injury or damage, the Court must dismiss Vanderhulst's implied warranty claim under California law. *See Weidman v. Ford Motor Co.*, No. 18-cv-12719, 2019 WL 3003693, at \*4 (E.D. Mich. July 10, 2019) (Noting that under California law one instance of "reduced braking power" cannot establish that the defect "prevented the vehicle from providing public transportation" and thus cannot establish an implied warranty claim.).

Plaintiff Deale, who bought his truck in North Carolina, also failed to allege that he suffered any defects or problems with his truck. *See* ECF 22, PgID 2268–70. Because he did not suffer any defects with his truck, the Court will dismiss the implied warranty claim under North Carolina law. *See Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 624 (M.D.N.C. 2006) (finding that because a plaintiff never pleaded a defect in his vehicle, he therefore failed to plead that the vehicle was unmerchantable and thus the implied warranty claim was dismissed).

20

B.     *Timeliness and Notice of Warranty Claims*

Under U.C.C. § 2-607(3)(a), "a buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach [of a warranty] or be barred from any remedy." And U.C.C. § 2-725 establishes a four-year limitations period for warranty claims, which accrues "when tender of delivery is made." FCA moved to dismiss several implied and express warranty claims because Plaintiffs arguably failed to provide timely notice, and because FCA said the limitations period expired. ECF 25, PgID 3483–85. For the following reasons, the Court will deny both arguments.

1.     *Timeliness of Notice*

FCA argued that the implied and express warranty claims by Anderson, Briggs, Ewing, Gouker, Mault, and Vanderhulst should be dismissed because they provided inadequate notice. ECF 25, PgID 3484. Yet Plaintiffs Anderson, Briggs, Ewing, Gouker, Mault, and Vanderhulst alleged that they put FCA on notice when they brought their trucks to FCA dealers and when they sent notice letters to FCA. ECF 26, PgID 3565–66. FCA, however, repeated that it did not receive timely notice from those Plaintiffs, that it received the notice letters from Mault and Vanderhulst the day they filed their initial complaint, and that it received Gouker's notice letter eight days after Plaintiffs filed the complaint. ECF 29, PgID 3976–77.

Given those arguments, the Court cannot rule on, pursuant to a motion to dismiss, whether FCA received timely notice. The parties must develop facts through discovery to help the Court determine whether Plaintiffs provided adequate notice,

and, if so, when FCA received the notices. Because the Court cannot find facts at the motion to dismiss stage, the Court will decline to dismiss the remaining implied and express warranty claims based on timeliness. *See Rembisz v. Lew*, 590 F. App'x 501, 503–04 (6th Cir. 2014) (a court cannot rule on a factual dispute at the motion to dismiss stage).

### 2. *Limitations Period*

As for the limitations period, FCA claimed that Plaintiffs Brainard, Crawford, Deale, Felker, Graham, Phelan, Raley, and Vanderhulst bought their trucks more than four years before Plaintiffs filed the present complaint. ECF 25, PgID 3485. Yet, Plaintiffs reasoned that the limitations period was tolled because FCA concealed the EGR cooler defect. ECF 26, PgID 3567; *see also* ECF 22, PgID 2360–61. FCA replied that the concealment argument lacks merit because Plaintiffs did not "plead 'concealment with particularity.'" ECF 29, PgID 3977–78 (*quoting Fillinger v. Lerner Sampson & Rothfuss*, 624 F. App'x 338, 341 (6th Cir. 2015)).

But here Plaintiffs pleaded concealment with particularity. *See Fillinger*, 624 F. App'x at 341. Plaintiffs alleged that "[u]ntil the announcement of the [] recall in October 2019, Plaintiffs . . . had no way of knowing about FCA's wrongful and deceptive conduct with respect to their defective [] [v]ehicles." ECF 22, PgID 2361. Because Plaintiffs alleged that they had no way of knowing about the defect until the recall, the Court cannot dismiss the warranty claims as untimely.

C.     *MMWA Claims*

The MMWA creates a federal cause of action for violating an express or implied warranty under state law. 15 U.S.C. § 2310(d)(1); *see also Golden v. Gorno Bros., Inc.*, 274 F. Supp. 2d 913, 916 (E.D. Mich. 2003). Because the "MMWA lacks substantive requirements," an MMWA claim hinges on "a sustainable claim for breach of warranty." *McKee v. General Motors LLC*, 376 F. Supp. 3d 751, 760 (E.D. Mich. 2019) (Murphy J.).

FCA argues that the Court should dismiss the MMWA claims because Plaintiffs never alleged any specific warranty terms and because Plaintiffs whose trucks have been repaired lack a claim under the MMWA. ECF 25, PgID 3478–80. In other words, FCA asked the Court to dismiss all express warranty claims as inadequately pleaded under the relevant state law. *Id.* at 3478. Apart from the few instances described above, FCA never detailed why the Court should dismiss the express or implied warranty claims under each states' laws. Instead, FCA merely asserted generalized arguments.

In any event, the Court disagrees with FCA's generic allegations. To establish breach of warranty claims, Plaintiffs must allege more than "mere probabilities, coupled with recitals of the elements of numerous causes of action and breathless legal conclusions." *Davisson v. Ford Motor Co.*, No. 13-cv-00456, 2014 WL 4377792, at *6 (S.D. Ohio Sept. 3, 2014). Contrary to FCA's assertions, Plaintiffs pleaded more than legal conclusions. Plaintiffs stated where they bought their trucks, the length of the truck's warranty, and when the damage occurred. *See generally* ECF 22. And,

most importantly, Plaintiffs attached an FCA brochure to its complaint that stated the warranty's terms. ECF 22-40, PgID 3362. Plaintiffs specifically pleaded how FCA "denied warranty obligations." ECF 22, PgID 2202 ("Under the Class Vehicles' New Vehicle Limited Warranty, FCA is required to address EGR Cooler repairs."). Plaintiffs therefore adequately alleged state law breach of express warranty claims and the Court cannot dismiss the MMWA claims.

FCA also moved to dismiss the MMWA claims for Plaintiffs Anderson, Deale, Felker, Gouker, Mault, and Vanderhulst because those Plaintiffs cannot allege a breach of express warranty given that they received a free replacement EGR cooler. ECF 25, PgID 3480. But those six Plaintiffs alleged that their repairs were untimely or ineffective. *See* ECF 22, PgID 2227, 2268, 2310, 2286–87, (Anderson, Deale, Mault, and Vanderhulst alleging that they were first denied a repair); *see also id.* at 2274–81 (Felker alleging that he never received an adequate repair); *see also id.* at 2282 (Gouker alleging that he made multiple visits to a dealership and was never told that his truck needed a repair). Because these six Plaintiffs alleged that their repair was delayed or ineffective, the allegations are sufficient to survive a motion to dismiss.

D.    *Conclusion*

In sum, for the warranty claims, the Court will dismiss the implied warranty claims under Arizona, Connecticut, Idaho, Washington, and Wisconsin law. The Court will also dismiss the implied warranty claim under North Carolina law and Plaintiff Vanderhulst's implied warranty claim under California law.

IV.   Remaining State Law Claims

FCA argued that Plaintiffs' unjust enrichment, breach of contract, and rescission claims fail for several reasons. The Court will address each in turn.

A.   *Unjust Enrichment*

FCA first argued that California, Massachusetts, and Texas law do not permit unjust enrichment claims. ECF 25, PgID 3485. Second, FCA argued that the unjust enrichment claims cannot proceed under Connecticut, Idaho, Maine, Oklahoma, South Carolina, Tennessee, Utah, Washington, and Wisconsin law because Plaintiffs bought their trucks from third-party dealers and not directly from FCA. *Id.* at 3485–86. Third, FCA argued that the unjust enrichment claims must be dismissed because Plaintiffs have an adequate remedy at law. *Id.* at 3486.

1.   *Unjust Enrichment under California, Texas, and Massachusetts Law*

In response to FCA's first argument, Plaintiffs noted that the Court should not dismiss the California, Massachusetts, and Texas unjust enrichment claims because courts interpreting those states' laws have allowed unjust enrichment claims to proceed in the alternative. *Id.* at 3568, n.45. But that argument fails to account for a decision by this court that recently dismissed similar unjust enrichment claims under California and Texas law because those states "do not recognize unjust enrichment as a cause of action." *Raymo*, 475 F. Supp. 3d at 709–11 (collecting cases). The Court will again adopt the *Raymo* reasoning and dismiss the Texas and California unjust enrichment claims.

But Massachusetts law differs. "Under Massachusetts law, recovery is allowed on an unjust enrichment theory where the defendant has received and retained some benefit where equity requires the restoration of the same to the plaintiff." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1008 (E.D. Mich. 2017). The Court will therefore decline to dismiss the Massachusetts unjust enrichment claim.

> 2.   *Unjust Enrichment Under Connecticut, Idaho, Maine, Oklahoma, South Carolina, Tennessee, Utah, Washington, and Wisconsin law*

FCA argued that the Court must dismiss the unjust enrichment claims under Connecticut, Idaho, Maine, Oklahoma, South Carolina, Tennessee, Utah, Washington, and Wisconsin law because Plaintiffs bought their trucks from dealers and not directly from FCA. ECF 25, PgID 3485–86. In other words, FCA argued that the claims must be dismissed because Plaintiffs never directly conferred anything to FCA—they never paid money directly to FCA in exchange for a truck.

Another court in the Eastern District of Michigan recently declined to dismiss unjust enrichment claims under Maine, South Carolina, and Utah when defendant argued that it did not receive a direct benefit from the plaintiffs. *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1015, 1020, 1026–28 (E.D. Mich. 2014). The Court will adopt the reasoning and decline to dismiss the Maine, South Carolina, and Utah unjust enrichment claims, and address the remaining unjust enrichment claims

Under Connecticut law, "[a]lthough unjust enrichment typically arises from a plaintiff's direct transfer of benefits to a defendant, it also may be indirect, involving,

for example, a transfer of a benefit from a third party to a defendant when the plaintiff has a superior equitable entitlement to that benefit." *Town of New Hartford v. Conn. Res. Recovery Auth.*, 970 A.2d 592, 618 (Conn. 2009). And while FCA cited a case that may support a different result, the case is an earlier, unpublished trial court opinion. *See* ECF 25, PgID 3486, n.39 (citing *Granito v. IBM*, No. X07CV020080440S, 2003 WL 1963161 (Conn. Super. Ct. Apr. 16, 2003)). The Court will follow the Connecticut Supreme Court's reasoning and allow the unjust enrichment claim to proceed.

The same is true under Tennessee law. The Tennessee Supreme Court expressly found that a plaintiff can bring an unjust enrichment claim against a defendant even if the plaintiff "did not purchase the items . . . directly from the defendant[]." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005).[6] The unjust enrichment claim under Tennessee law may therefore proceed.

But Idaho, Oklahoma, Washington, and Wisconsin law expressly require a plaintiff to confer a direct benefit to the defendant.[7] Because Plaintiffs do not dispute

---

[6] Because unjust enrichment is a state law issue, the Court will follow the Tennessee Supreme Court and decline to examine the case FCA cited from the District of Columbia dealing with the same issue. *See* ECF 25, PgID 3486.

[7] *Loeb v. Champion Petfoods USA Inc.*, 359 F. Supp. 3d 597, 605 (E.D. Wis. 2019) ("[I]t is undisputed that Plaintiff[s] bought [their products] in various [supply stores], not from Defendant[] directly."); *Lee v. Enter. Fin. Group*, No. CIV-08-1221-M, 2009 WL 1362605, at *2 (W.D. Okla. May 14, 2009) (Dismissing an unjust enrichment claim because "plaintiffs [did] not allege that defendant [] was involved at the point of sale . . . nor do plaintiffs allege that defendant [] was ever paid a part of the . . . fee or premium, or allege facts which explain how [] defendants could have wrongfully retained the monies involved."); *Med. Recovery Servs. v. Bonneville Billing &*

that they bought their trucks from a dealer and not directly from FCA, they conferred no direct benefit to FCA and the claims based on those states' laws must be dismissed. In the end, the Court will dismiss only the unjust enrichment claims under California, Idaho, Texas, Oklahoma, Washington, and Wisconsin law.

### 3. Remedies at Law

FCA moved to dismiss all the unjust enrichment claims because Plaintiffs have an adequate remedy at law. ECF 25, PgID 3486. Admittedly, "a legal remedy[] will bar a claim of unjust enrichment, which seeks an equitable remedy." *Kingsley Assocs. Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 506 (6th Cir. 1995). But, "unjust enrichment claims routinely are allowed to proceed when pleaded in the alternative to other viable claims for relief." *In re Gearshift Litig.*, 280 F. Supp. 3d at 1009 (citation omitted); *see also* Fed R. Civ. P. 8(a)(3) (A pleading "may include relief in the alternative."). In its reply, FCA suggests that *Miller v. General Motors, LLC* precludes the unjust enrichment claims. ECF 29, PgID 3978 (citing No. 17-cv-14032, 2018 WL 2740240, at *15 (E.D. Mich. June 7, 2018) (Ludington, J.)). And *Miller* dismissed the unjust enrichment claims because the parties had a valid warranty contract. 2018 WL 2740240, at *15. Unlike *Miller*, however, the Court has not found the parties have a valid warranty contract that would provide Plaintiffs with an adequate remedy at

---

*Collections, Inc.*, 336 P.3d 802, 806 (Idaho 2014) ("To confer a benefit in the context of unjust enrichment, the plaintiff must give the defendant an interest in money, land, or possession, or perform services beneficial to, or at the request of, the other."); *Nat'l Sur. Corp. v. Immunex Corp.*, 256 P.3d 439, 447, n.11 (Wash. Ct. App. 2011) ("To establish a theory of unjust enrichment, a party must show a benefit conferred upon the defendant by the plaintiff.").

law. The Court will therefore not sidestep Rule 8's instruction to allow alternative pleadings and will decline to dismiss the remaining unjust enrichment claims.

> B.    *Breach of Contract*

FCA also moved to dismiss the breach of contract claims because Plaintiffs never contracted with FCA or FCA's agents. ECF 25, PgID 3487. Plaintiffs agreed that they did not purchase the trucks from FCA directly, but Plaintiffs argued that the breach of contract claims should not be dismissed because they adequately alleged an agency relationship between FCA and its dealers. ECF 26, PgID 3569–70; *see also* ECF 22, PgID 2357–60 (allegations of an agency relationship). Yet FCA claimed the allegations are insufficient because "Plaintiffs cannot rely on agency principles to save their contract claims because 'a franchised automobile dealer . . . is an independent merchant and not an agent of the manufacturer.'" ECF 25, PgID 3487 (quoting *Arnson v. General Motors Corp.*, 377 F. Supp. 209, 212 (N.D. Ohio 1974)). In support, FCA cited several cases that interpreted state law. *Id.* at n. 41. But FCA cited no case that served as authority for granting a motion to dismiss.[8]

---

[8] The cases that FCA relied on found only that plaintiffs failed to allege an agency relationship or made findings at the class certification, summary judgment, or trial stage. *See, e.g.*, *Arnson*, 344 F. Supp. at 211 (defendant moved for an order denying class certification, dismissing two of the claims, and granting summary judgment on two claims); *Kahn v. Volkswagen of Am., Inc.*, No. FSTCV075004090S, 2008 WL 590469, at *11 (Conn. Super. Ct. Feb. 13, 2008) (plaintiff failed to allege dealership was agent of defendant); *Prof. Lens Plan, Inc. v. Polaris Leasing Corp.*, 710 P.2d 1297 (Kan. 1985) (affirming grant of summary judgment); *Mercedes-Benz of N. Am., Inc. v. Garten,* 618 A.2d 233 (Md. Ct. Spec. App. 1993) (affirming in part and remanding in part a bench trial verdict).

Although FCA may defeat the agency claims, it cannot do so on a motion to dismiss. Plaintiffs adequately alleged that FCA's dealers were agents of FCA. ECF 22, PgID 2357–60. And FCA does not disagree; FCA merely alleges that agency principles do not apply. ECF 25, PgID 3487. The Court will therefore decline to dismiss the breach of contract claims.

C.    *Rescission Claims*

Finally, FCA contended that Plaintiffs' "failure to plead a contract" destroys the rescission claims, and thus the claims cannot be saved "through manufacturer's warranties and an alleged agency relationship." ECF 25, PgID 3488–89. FCA also moved to dismiss the Arizona, Connecticut, Idaho, Illinois, Iowa, Kansas, Maine, Maryland, Minnesota, Nevada, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Washington, and Wisconsin rescission claims because "rescission is available only where it will return the contracting parties to the pre contracting status quo." *Id.* at 3489–90. The Court will address the specific pre-contracting status argument first.

FCA asserted that "the parties cannot be returned to their pre-contracting positions because Plaintiffs have driven their Trucks for thousands of miles and irreversibly modified them through use." *Id.* at 3490. But Plaintiffs highlighted that "Courts in the states for which [FCA] seeks dismissal on" the grounds that the trucks have been modified "permit rescission in fraud cases." ECF 26, PgID 3571.

At any rate, the Court already dismissed the fraud claims. Thus, by Plaintiffs' own admissions, the rescission claims based in Arizona, Connecticut, Idaho, Illinois,

Iowa, Kansas, Maine, Maryland, Minnesota, Nevada, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Washington, and Wisconsin law cannot stand. The Court will therefore dismiss those rescission claims.

The only remaining rescission claims are those based on California, Hawaii, Massachusetts, North Carolina, Texas, Utah, and Virginia law. FCA asserted that Plaintiffs cannot save the remaining rescission claims "through manufacturer's warranties and an alleged agency relationship." ECF 25, PgID 3488–89. But ruling on the agency relationship at this point is premature. The Court has not yet determined whether FCA and its dealers had an agency relationship. For that reason, the Court will not dismiss the remaining rescission claims.

In sum, the Court will dismiss the unjust enrichment claims under California, Idaho, Oklahoma, Texas, Washington, and Wisconsin law. It will also dismiss the rescission claims under Arizona, Connecticut, Idaho, Illinois, Iowa, Kansas, Maine, Maryland, Minnesota, Nevada, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Washington, and Wisconsin law. The remaining claims may proceed.

## CONCLUSION

The Court will grant the motion for leave to file supplemental authority, ECF 30, and grant in part and deny in part the motion to dismiss, ECF 22. The Court will dismiss the nationwide fraudulent concealment claim and all claims related to 2019 model year class trucks. The Court will also dismiss all state common law and statutory fraud and fraud related claims because they were not pleaded with Rule 9 particularity. Next the Court will dismiss the implied warranty claims under Arizona,

Connecticut, Idaho, Washington, and Wisconsin law, along with Plaintiff Deale's implied warranty claim under North Carolina law and Plaintiff Vanderhulst's implied warranty claim under California law. So, too, the Court will dismiss the unjust enrichment claims under California, Idaho, Oklahoma, Texas, Washington, and Wisconsin law. Finally, the Court will dismiss the rescission claims under Arizona, Connecticut, Idaho, Illinois, Iowa, Kansas, Maine, Maryland, Minnesota, Nevada, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Washington, and Wisconsin law. The following chart sums up what state claims the Court has dismissed:

| State Law Claim | Dismissed | Not Dismissed |
|---|---|---|
| **Fraud and Consumer Protection Claims** | Arizona, California, Connecticut, Hawaii, Idaho, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Minnesota, Nevada, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin. | |
| **Implied Warranty** | Arizona, Connecticut, Idaho, North Carolina, Washington, and Wisconsin. | California, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Minnesota, Nevada, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, and Virginia. |
| **Unjust Enrichment** | California, Idaho, Oklahoma, Texas, Washington, and Wisconsin. | Arizona, Connecticut, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Minnesota, Nevada, North Carolina, Oregon, Pennsylvania, |

| | | South Carolina, Tennessee, Utah, and Virginia. |
|---|---|---|
| **Breach of Contract (Express Warranty)** | | Arizona, California, Connecticut, Hawaii, Idaho, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Minnesota, Nevada, North Carolina, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin. |
| **Rescission** | Arizona, Connecticut, Idaho, Illinois, Iowa, Kansas, Maine, Maryland, Minnesota, Nevada, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Washington, and Wisconsin. | California, Hawaii, Massachusetts, North Carolina, Texas, Utah, and Virginia. |

## ORDER

**WHEREFORE,** it is hereby **ORDERED** that Plaintiffs' motion for leave to file notice of supplemental authority [30] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss consolidated class action complaint [25] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the nationwide fraudulent concealment claim is **DISMISSED**.

**IT IS FURTHER ORDERED** that all claims related to 2019 model year class trucks are **DISMISSED**.

**IT IS FURTHER ORDERED** that the state common law and statutory fraud and fraud related claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that the implied warranty claims under Arizona, Connecticut, Idaho, Washington, and Wisconsin law are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff Deale's implied warranty claim under North Carolina law is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff Vanderhulst's implied warranty claim under California law is **DISMISSED**.

**IT IS FURTHER ORDERED** that the unjust enrichment claims under California, Idaho, Oklahoma, Texas, Washington, and Wisconsin law are **DISMISSED**.

**IT IS FURTHER ORDERED** that the rescission claims under Arizona, Connecticut, Idaho, Illinois, Iowa, Kansas, Maine, Maryland, Minnesota, Nevada, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Washington, and Wisconsin law are **DISMISSED**.

**IT IS FURTHER ORDERED** that the remaining claims may **PROCEED**.

**IT IS FURTHER ORDERED** that Defendant must **ANSWER** the complaint within **twenty-one** days of this order.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 13, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 13, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

34