UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY CRAWFORD, et al.,

                Plaintiffs,

Case No. 2:20-cv-12341

v.

HONORABLE STEPHEN J. MURPHY, III

FCA US LLC,

                Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART
## AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [71]

A class of Plaintiffs sued Defendant FCA and alleged that it "sold hundreds of thousands of Dodge Ram 1500 and 1500 Classic vehicles equipped with 3.0L Eco Diesel engines (the "Class Vehicles") which contain grossly defective [exhaust gas recirculation] coolers." ECF 1, PgID 6. Some of Plaintiffs' engines caught on fire. Defendant moved for summary judgment on the claims concerning the Plaintiffs whose engines did not catch fire. For the reasons below, the Court will grant the motion in part.

## BACKGROUND

I.    <u>Defect and Recall</u>

In October 2019, Defendant voluntarily recalled vehicles from 2014–2019 that "may have been built with Exhaust Gas Recirculation ('EGR') coolers that are susceptible to thermal fatigue . . . [and thus] may cause the cooler to crack internally

over time." ECF 78-3, PgID 4754. The recall provided class vehicle owners with a free repair and reimbursement for any prior repairs. ECF 71-4, PgID 4759.

Defendant initiated the recall because the EGR coolers tended to suffer from thermal fatigue that caused vehicle fires. *See* ECF 22-3, PgID 2770. Defendant estimated that "100%" of the recalled Class Vehicles contained the EGR defect. *Id.* at 2770−71. Because coolant loss is a warning sign of the defect, *id.*, Defendant instructed its authorized dealers to inform class vehicle owners to check their coolant levels weekly, ECF 78-2, PgID 5618.

Defendant was aware of the EGR defect in 2016. ECF 78-3, PgID 5622; ECF 78-5, PgID 5629. Defendant officially opened an investigation into the defect in January 2017. ECF 78-5, PgID 5632. The investigation confirmed that the "suspect cooler was manufactured on all 2014−2019 [class vehicle] engines," "[t]he cracks were always observed in the same physical location on [the EGR cooler]," and any "[d]ifferences in and number of [fire] occurrences by model year is due to population differences and time in service." ECF 78-6, PgID 5672, 5693. By November 5, 2019, Defendant identified thousands of EGR cooler leaks that dated back to June 2015. ECF 78-7, PgID 5708.

II.   Plaintiffs Without Fires

The following Plaintiffs purchased Class Vehicles but did not experience engine fires: James Deale, Justin Ewing, Greg Gouker, Kara Gulbranson, Leroy Mault, and Hank Vanderhulst. Because the motion at issue involves only the

Plaintiffs whose vehicles did not catch fire, the Court will refer to the six Plaintiffs named in this paragraph as "Plaintiffs."

Plaintiffs sued Defendant for breach of contract (breach of express warranty), breach of implied warranty, breach of warranty under the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301, *et seq.*, and unjust enrichment. ECF 1, 22; *Briggs, et al. v. FCA US LLC*, No. 20-cv-13235. Defendant moved to dismiss the complaint, and the Court then dismissed some of Plaintiffs' claims according to the potentially applicable individual State laws. *See* ECF 35. Defendant later moved for summary judgment on the remaining claims. ECF 71.

### A.   *James Deale*

Plaintiff James Deale bought a new 2015 Dodge Ram 1500 truck from a dealership in North Carolina on October 15, 2015. *See* ECF 78-8, PgID 5767, 5780; ECF 22, PgID 2268. He drove his vehicle for four years before Defendant recalled the defective EGR cooler. *See* ECF 71-3, PgID 4756 (showing the recall occurred in 2019). Plaintiff Deale experienced coolant loss. *Id.* at 5773. On June 9, 2020, an FCA-authorized dealership informed Plaintiff Deale that the EGR cooler replacement parts were not available for his truck. *Id.* at 5777. He received the replacement five months later in November 2020. *Id.* Plaintiff Deale represented that he either would not have purchased the vehicle or would have paid less for it if he knew of the defect at the time of purchase. ECF 22, PgID 2269–70.

B.   *Justin Ewing*

Plaintiff Justin Ewing bought a new 2015 Dodge Ram 1500 truck on August 19, 2015 from a dealership in Wisconsin. ECF 78-10, PgID 5809; ECF 22, PgID 2312. He drove his vehicle for four years before Defendant recalled the defective EGR cooler. *See* ECF 71-3, PgID 4756 (showing the recall occurred in 2019). In July 2020, Plaintiff Ewing told his FCA-authorized dealership that the truck was losing coolant. ECF 78-10, PgID 5803. The dealership added coolant for free. *Id.* at 5816. After receiving the recall notice in the summer of 2020, the dealership informed Plaintiff Ewing that EGR replacement parts were not available for his truck. *Id.* at 5815. Plaintiff Ewing received the recall repair in May 2021. *Id.* at 5806. Plaintiff Ewing represented that he either would not have purchased the vehicle or would have paid less for it if he knew of the EGR defect at the time of purchase. *Id.* at 5819−20.

C.   *Greg Gouker*

Plaintiff Greg Gouker bought a used 2016 Dodge Ram 1500 truck in December 2019 in Texas. ECF 78-12, PgID 5844; ECF 22, PgID 2281. No one at his dealership told Plaintiff about the defect before he bought his truck, and he was not aware of the defect. *Id.* at 5857. In June 2020, nearly seven months after purchasing the truck, Plaintiff Gouker requested an EGR cooler replacement from an FCA-authorized dealership. *Id.* at 5860−61. The dealership informed him that the parts were unavailable. *Id.* In July 2020—after requesting the EGR cooler replacement— Plaintiff Gouker "heard . . . sparks" and saw smoke and "burning wires" while he was driving. *Id.* at 5847. His truck lost power. *Id.*

4

When Plaintiff Gouker received the replacement EGR cooler and additional engine coolant, the dealership also replaced his battery and water pump. *Id.* at 5841. Plaintiff Gouker never received an explanation for why he received a new water pump. *Id.* at 5852. Plaintiff Gouker represented that he either would not have purchased the vehicle or would have paid less for it if he knew of the EGR defect at the time of purchase. ECF 22, PgID 2283−84.

D.   *Kara Gulbranson*

Plaintiff Kara Gulbranson bought a new 2016 Dodge Ram 1500 truck on March 29, 2016 from a dealership in Minnesota. ECF 78-14, PgID 5885; ECF 22, PgID 2256. She drove her vehicle for more than three years before Defendant recalled the defective EGR cooler. *See* ECF 71-3, PgID 4756 (showing the recall occurred in 2019). After learning of the recall, Plaintiff Gulbranson called her FCA-authorized dealership on three separate occasions (July 2020, September 2020, and December 2020) for an EGR replacement, but each time the dealership informed her that the parts were unavailable. ECF 78-14, PgID 5892. Plaintiff Gulbranson did not receive the replacement until March 2021. *Id.* at 5895. During the seven months she waited for the EGR replacement, Plaintiff Gulbranson limited her use of her truck because she was afraid it might catch fire. *Id.* at 5889. Plaintiff Gulbranson represented that she either would not have purchased the vehicle or would have paid less for it if she knew of the EGR defect at the time of purchase. *Id.* at 5898; ECF 22, PgID 2258−59.

E.   *Leroy Mault*

Plaintiff Leroy Mault bought a new 2016 Dodge Ram 1500 truck on October 14, 2016 from a dealership in Utah. ECF 78-16, PgID 5919; ECF 22, PgID 2285. He drove his vehicle for three years before Defendant recalled the defective EGR cooler. *See* ECF 71-3, PgID 4756 (showing the recall occurred in 2019). Plaintiff Mault's truck experienced coolant loss, which prompted him to contact his dealership in April 2020. ECF 78-16, PgID 5923, 5926. Plaintiff Mault also contacted an FCA-authorized dealership in March or April 2020 to request the EGR cooler replacement parts. The dealership informed him that the parts were not available. *Id.* at 5933.

In June 2020, Plaintiff Mault contacted a different FCA-authorized dealership to request the EGR cooler replacement parts, but he was again informed that no parts were available. *Id.* at 5936. While he waited for the EGR replacement, Plaintiff Mault limited his use of the truck. *Id.* at 5929. He received the EGR replacement on November 3, 2020. *Id.* at 5945. Plaintiff Mault represented that he either would not have purchased the vehicle or would have paid less for it if he knew of the EGR defect at the time of purchase. *Id.* at 5942; ECF 22, PgID 2288.

F.   *Hank Vanderhulst*

Plaintiff Hank Vanderhulst bought a new 2014 Dodge Ram 1500 truck on August 19, 2014 from a dealership in California. ECF 78-18, PgID 5965; ECF 22, PgID 2225. He drove his vehicle for five years before Defendant recalled the defective EGR cooler. *See* ECF 71-3, PgID 4756 (showing the recall occurred in 2019). Plaintiff Vanderhulst's truck experienced coolant loss. *Id.* at 5969, 5975, 5979, 5981, 5990.

Plaintiff Vanderhulst contacted his FCA-authorized dealership on three separate occasions to have his EGR cooler replaced (around March or April 2020, June 2020, and July 2020) but each time the EGR cooler replacement parts were unavailable. *Id.* at 5985, 5988, 5989. Plaintiff Vanderhulst received the EGR replacement in September 22, 2020. *Id.* at 5972. Plaintiff Vanderhulst represented that he would not have purchased the vehicle, or he would have paid less for it if he knew of the EGR defect at the time of purchase. *Id.* at 5975; ECF 22, PgID 2228−29.

## LEGAL STANDARD

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion,

7

the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## STANDING

Defendant argued that because it repaired the vehicles for free, Plaintiffs have no damages and thus no standing. ECF 71, PgID 4738; *see also* ECF 35, PgID 4733 (citing *Hadley*, 624 F. App'x 374). But, as the Court previously decided when it denied Defendant's motion to dismiss, ECF 35, Plaintiffs alleged an injury in fact sufficient to establish standing.

To establish standing, Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). Plaintiffs sustained a concrete injury when they purchased vehicles with defective parts. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 857 (6th Cir. 2013) (holding that consumers who bought a defective product were injured at the point of sale); *c.f. Hadley v. Chrysler Grp.*, LLC, 624 F. App'x 374, 378 (6th Cir. 2015) (holding that a diminished value theory at the point of sale did not support standing because the defect was not present at the point of sale). Because Defendant manufactured the vehicles with defective parts, the injury is traceable to Defendant. Last, a favorable ruling—one that finds Defendant breached the express or implies warranties—would redress the injury. Plaintiffs therefore have standing.

8

Defendant's argument conflates injury with damages and assumes in calculating damages that Defendant will prevail on the merits. But the repair does not negate the fact Plaintiffs suffered a concrete injury. And Plaintiffs do not lack standing simply because Defendant may ultimately prevail on the merits. Moreover, Defendant's reliance on *Hadley* is misplaced. In *Hadley*, the Sixth Circuit held that a diminished-value damages theory did not support a finding that the plaintiffs had standing. *Hadley*, 624 F. App'x at 378. The *Hadley* court then expressly distinguished its holding from *Cole v. General Motors Corp.,* 484 F.3d 717, 722–23 (5th Cir. 2007), an opinion that determined economic losses from defective vehicles readily established damages. *Id.* In *Hadley*, unlike in *Cole*, the defects did not exist at the time of purchase. *Id.* But here, as in *Cole*, the vehicles were defective at the time of sale and *Hadley* therefore does not apply. Summary judgment is denied as to Defendant's standing argument.

## MOOTNESS

Defendant argued in the alternative that the free repairs rendered all of Plaintiffs' claims moot. ECF 71, PgID 4734. Not so. The mootness doctrine "requires that there be a live case or controversy at the time that a federal court decides the case." *Burke v. Barnes*, 479 U.S. 361, 363 (1987) (citation omitted). "[I]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed." *Ailor v. City of Maynardville*, 368 F.3d 587, 596 (6th Cir. 2004) (quotation marks and quotation omitted). "Ultimately, the test for mootness is whether the relief sought would, if

9

granted, make a difference to the legal interests of the parties." *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019) (quotation marks and quotation omitted).

Plaintiffs' claims are not moot. If Plaintiffs succeed on their claims for breach of implied warranty, they will be entitled to diminished value damages. *See* U.C.C. § 2-714. Diminished value damages are measured by the difference between the value of the goods as accepted and the value of the goods as warranted. *Id.* Whether the defect was repaired will not impact the value of the goods as warranted. And if the value of the goods as warranted is greater than the value of the goods as accepted, Plaintiffs will have damages despite the repair. Thus, two questions remain that will affect the legal rights of the parties: (1) whether the defect breached the implied warranty, and (2) what amount reflects the difference in value between the vehicles as warranted and the vehicles as accepted. Plaintiffs' breach of implied warranty claims are not moot. *See Benningfield*, 920 F.3d at 410.

Similarly, Plaintiffs' breach of contract (express warranty) claims are not moot. Plaintiffs argued that the warranty failed its essential purpose because of the unreasonable delay in receiving the repair. ECF 78, PgID 5601−04. And if Plaintiffs succeed on that claim, they may be entitled to incidental and consequential damages for breach of contract (express warranty). *See, e.g.*, *Schurtz v. BMW of N. Am., Inc.*, 814 P.2d 1108, 1113–14 (Utah 1991); *Luckey v. Alside, Inc.*, 245 F. Supp. 3d 1080, 1090 (D. Minn. 2017); Wis. Stat. § 402.719(3); *Becker v. Continental Motors, Inc.*, 4:13–CV–520, 2015 WL 1333235, at *5 (N.D. Tex. Mar. 24, 2015); *RRX Indus., Inc. v.*

*Lab-Con, Inc.*, 772 F.2d 543, 547 (9th Cir. 1985) (noting that under California law, "a plaintiff may pursue all remedies available for breach of contract if its exclusive or limited remedy fails of its essential purpose"). Because a favorable ruling could affect the rights of the parties, Plaintiffs' claims are not moot. *See Benningfield*, 920 F.3d at 410.

Notwithstanding the analysis above, Defendant argued that the Court should exercise prudential mootness. ECF 88 (citing *Solak v. Ford Motor Co.*, No. 23-cv-10064, 2023 WL 4628456, at *3 (E.D. Mich. July 19, 2023)). The Court will decline to exercise prudential mootness. Prudential mootness is discretionary, and the Court may exercise it when "a controversy, not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Solak*, 2023 WL 4628456, at *3. Significantly, "[t]he party asserting prudential mootness carries the burden of establishing the absence of any effective relief the court may conceivably provide." *Id.* Here, Defendant needed to establish that the Court cannot conceivably provide effective relief to Plaintiffs. But, as set forth above, relief is clearly available to Plaintiffs if they prevail.

What is more, the summary judgment analysis similarly requires Defendant to establish that Plaintiff is not entitled to relief. The prudential mootness analysis therefore does not meaningfully differ from the summary judgment analysis. And to the extent the analysis would be different, exercising prudential mootness would

deprive Plaintiffs of their right to relief. Accordingly, the Court will not exercise its discretion to invoke prudential mootness.

## BREACH OF CONTRACT (EXPRESS WARRANTY)

Defendant is entitled to summary judgment only on Plaintiff Ewing's breach of contract claim. In assessing Plaintiffs' claims for breach of warranty, the Court will apply the law of the place at which Plaintiffs bought their vehicles. A "federal court sitting in diversity applies the choice-of-law rules of the [S]tate in which the court sits." *Talmer Bank & Tr. v. Malek*, 651 F. App'x 438, 442 n.3 (6th Cir. 2016) (quotation marks and quotation omitted). Under Michigan law, "in an action involving a sale, the law of the place of the sale determines the extent and effect of the warranties which attend the sale." *Schultz v. Tecumseh Prods.*, 310 F.2d 426, 428 (6th Cir. 1962) (citations omitted). Each Plaintiff purchased his/her truck in a different State: Plaintiff Deale in North Carolina, Plaintiff Ewing in Wisconsin, Plaintiff Gouker in Texas, Plaintiff Gulbranson in Minnesota, Plaintiff Mault in Utah, and Plaintiff Vanderhulst in California. ECF 22, PgID 2225, 2256, 2268, 2281, 2285, 2312. Thus, North Carolina, Wisconsin, Texas, Minnesota, Utah, and California law govern Plaintiffs' respective claims for breach of contract.

"A buyer seeking to recover for breach of warranty must establish: (1) the existence of a warranty, (2) breach of that warranty; and (3) that the breach caused the alleged harm." *Driscoll v. Standard Hardware, Inc.*, 785 N.W.2d 805, 816 (Minn. Ct. App. 2010) (citation omitted). Defendant provided Plaintiffs with an express

warranty, so the first element is satisfied. ECF 71-12. The Court will analyze the remaining two elements—breach and damages—below.

I.   <u>Breach</u>

Plaintiffs adduced evidence in discovery to support their claims that Defendant breached the warranty. Defendant argued that because the warranty did not guarantee a defect-free vehicle, Plaintiffs cannot show Defendant breached the warranty. ECF 71, PgID 4742. But Plaintiffs argued that the repair was not made within a reasonable time. ECF 78, PgID 5604. And if the repair was not made within a reasonable time, Defendant breached the warranty. *See Santana v. FCA US, LLC*, 56 Cal. App. 5th 334, 346 (Cal. App. 2020); *Smith v. Mobility Grp., Inc.*, No. A07-1037, 2008 WL 2168436, at *4 (Minn. App. 2008); *Stutts v. Green Ford, Inc.*, 47 N.C. App. 503, 511 (N.C. App. 1980); *Mercedes-Benz of N. Am., Inc. v. Dickenson*, 720 S.W.2d 844, 854 (Tex. App. 1986); *Murray v. Holiday Rambler, Inc.*, 83 Wis. 2d 406, 420 (Wis. 1978); *Devore v. Bostrom*, 632 P.2d 832, 835 (Utah 1981). The question of whether the repair was made within a reasonable time is a genuine issue of material fact.

A reasonable jury could find that the repair was not made in a reasonable time.[1] Plaintiffs presented evidence that showed Defendant knew of the EGR thermal fatigue defect as early as 2016. ECF 78-3, PgID 5622; ECF 78-5, PgID 5629. And Defendant opened an investigation into the issue in January 2017. ECF 78-5, PgID

---

[1] When what constitutes a reasonable time is "dependent on many different circumstances which do not constantly recur in other cases of like character, and with respect to which no certain rule of law has heretofore been laid down, or could be laid down, the question is one of fact for the jury." *Hamilton v. Phoenix Ins. Co. of Hartford*, 61 F. 379, 390 (6th Cir. 1894).

5632. Defendant, however, did not disclose the defect until late 2019. *See* ECF 71-3, PgID 4756. Plaintiffs did not receive the repairs until late 2020 or, in some cases, until the spring of 2021. ECF 78, PgID 5602. Viewing the facts in the light most favorable to Plaintiffs, a reasonable jury could infer that the year it took to receive the repair—or alternatively, the four to five years it took cumulatively to become aware of the defect and receive the repair—was unreasonable. A genuine issue of material fact exists concerning whether Defendant breached the warranty.

II.   Damages

Defendant argued alternatively that it was entitled to summary judgment on Plaintiffs' breach of contract claims because Plaintiffs have no breach of contract damages. ECF 71, PgID 4739.

A. *Plaintiff Deale*

A jury could find that Plaintiff Deale suffered damages from Defendant's breach of contract. North Carolina law considers a repair to offset damages as part of the State's jurisprudential analysis of breach of contract damages but acknowledges that "[e]ven if all defects in the vehicle have been cured, that increase in value would not restore the vehicle to its value as warranted on the date of purchase, since depreciation must be taken into account." *Williams v. Hyatt Chrysler-Plymouth, Inc.*, 48 N.C. App. 308, 318 (N.C. App. 1980). Here, Defendant failed to produce evidence to demonstrate that the diminution of value calculation for Plaintiff Deale's vehicle precluded recovery. *See* ECF 71, 84; *Celotex Corp.*, 477 U.S. at 323 (the moving party must point to specific portions of the record that "it believes demonstrate the absence

14

of a genuine issue of material fact"). Defendant is not entitled to summary judgment on Plaintiff Deale's breach of contract claim.

### B. *Plaintiffs Gouker, Gulbranson, Mault, and Vanderhulst*

Likewise, a jury could find that Plaintiffs Gouker, Gulbranson, Mault, and Vanderhulst suffered breach of contract damages. Under the law of the applicable States—Texas, Minnesota, Utah, and California—benefit of the bargain damages are measured by the lesser of a) the cost of repair or b) the difference between the fair market value of the vehicle as warranted and the fair market value of the vehicle as sold. *See e.g., In re Takata Airbag Prod. Liab. Litig.*, No. 15-MD-02599, 2022 WL 17546365, at *3 (S.D. Fla. Nov. 10, 2022) (analyzing California law) (collecting cases); *Westfield Ins. Co. v. Weis Builders, Inc.*, 2004 WL 5508126, *2 (D. Minn. 2004); *Orr Chevrolet, Inc. v. Courtney*, 488 S.W.2d 883, 886 (Tex. Civ. App. 1972); *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 28 P.3d 669, 680 (Utah 2001). Because each Plaintiff received a free repair, ECF 78, PgID 5602, Defendant is correct that Plaintiffs are entitled to zero dollars in benefit of the bargain damages.

But Defendant is not entitled to summary judgment because the question of whether Plaintiffs have consequential damages flowing from the breach is a genuine issue of material fact. Defendant argued that the warranty expressly precluded the recovery of incidental and consequential damages. ECF 71, PgID 4740. And Plaintiffs correspondingly argued that the preclusion or limitation is void because the warranty failed its essential purpose. ECF 78, PgID 5601−04; *see also RRX*, 772 F.2d at 547 (noting under California law, "a plaintiff may pursue all remedies available for breach

of contract if its exclusive or limited remedy fails of its essential purpose"); *Becker*, 2015 WL 1333235, at \*5; *Luckey*, 245 F. Supp. 3d at 1090; *Schurtz*, 814 P.2d at 1113–14. To prove that the warranty failed its essential purpose, Plaintiffs must show that the repair was not made in a reasonable time. *See Becker*, 2015 WL 1333235, at \*5 ("[T]he limited remedy fails of its essential purpose and deprives the buyer of the substantial value of the bargain when the warrantor does not correct the defect within a reasonable time."); *Spindler v. Gen. Motors, LLC*, 616 F. Supp. 3d 943, 948 (N.D. Cal. 2022); *Far E. Aluminum Works Co. Ltd. v. Viracon, Inc.*, 520 F. Supp. 3d 1106, 1111–12 (D. Minn. 2021); *Devore*, 632 P.2d at 835. And as noted above, a jury could well determine that repairs for the four Plaintiffs were not made in a reasonable time. Thus, whether Defendant is entitled to summary judgment depends on whether Plaintiffs offered evidence of consequential damages. And a reasonable jury could find that Plaintiffs suffered consequential damages.

Plaintiffs claimed they were damaged (1) by coolant loss, *see e.g.,* EFC 78, PgID 5586–89, (2) by voluntarily limiting the use of the truck because of safety concerns, *see, e.g., id.* at 5588, 5598, and (3) in one instance, when Plaintiff Gouker paid to have his car towed when it lost power after sparking and smoking, ECF 78-12, PgID 5842, 5847. According to Defendant's internal report, the defect causes coolant loss. ECF 22-3, PgID 2770. A jury could thus infer that the defect caused Plaintiffs' coolant loss. Similarly, a jury could infer that the defect caused the loss of use because Plaintiffs testified that they used their vehicles less due to fear of consequences from the

defects, ECF 78-14, PgID 5889; ECF 78-16, PgID 5929. And indeed, a reasonable person could infer that the risk of fire might deter use.

Last, because the defect caused engine fires, a jury could determine that the defect also caused the sparks, smoke, and burning wires in Plaintiff Gouker's car—and therefore caused the vehicle to be towed. Accordingly, Plaintiffs Gouker, Gulbranson, Mault, and Vanderhulst may be entitled to consequential damages for coolant loss, loss of use, and towing. Defendant is not entitled to summary judgment on the claims of Plaintiffs Gouker, Gulbranson, Mault, and Vanderhulst for breach of contract.

### C. *Plaintiff Ewing*

Unlike the other Plaintiffs, Plaintiff Ewing failed to support his claim for breach of contract damages. Plaintiff Ewing provided no evidence that he suffered consequential damages. *See generally* ECF 78. To be sure, Plaintiff Ewing's truck experienced coolant loss. *Id.* at 5803. But Defendant presented evidence that the dealership refilled Plaintiff Ewing's coolant for free. *Id.* at 5816. And Plaintiff Ewing did not provide contradictory evidence or evidence of other consequential damages. *See* ECF 78. Thus, no genuine issue of material fact exists concerning Plaintiff Ewing's consequential damages.

Because Defendant repaired Plaintiff Ewing's vehicle for free, he was restored to "the position he would have been in had the product functioned properly." *See State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 317–18 (Wis. 1999) (quotation marks and quotation omitted). Plaintiff Ewing's benefit of the bargain

damages are zero dollars. And Defendant is entitled to summary judgment on Plaintiff Ewing's breach of contract claim.

## BREACH OF IMPLIED WARRANTY

The Court will deny summary judgment to Defendant on Plaintiffs' breach of implied warranty claims. As noted above, when it assesses Plaintiffs' claims for breach of implied warranty, the Court must apply the law of the place where Plaintiffs bought their vehicles. Under Michigan law, "in an action involving a sale, the law of the place of the sale determines the extent and effect of the warranties which attend the sale." *Schultz*, 310 F.2d at 428; *see also Malek*, 651 F. App'x at 442 n.3 (noting that a "federal court sitting in diversity applies the choice-of-law rules of the state in which the court sits"). Only Plaintiffs Gouker, Gulbranson, and Mault have claims remaining for breach of implied warranty.[2] Texas, Minnesota, and Utah law govern Plaintiffs' respective claims for breach of implied warranty. *See* ECF 22, PgID 2256, 2281, 2285.

 "A buyer seeking to recover for breach of warranty must establish: (1) the existence of a warranty, (2) breach of that warranty; and (3) that the breach caused the alleged harm." *Driscoll*, 785 N.W.2d at 816 (citation omitted). Here, a warranty

---

[2] North Carolina, Wisconsin, and California law govern the claims of Plaintiffs Deale, Ewing, and Vanderhulst for breach of implied warranty. *See* ECF 22, PgID 2268 (Plaintiff Deale purchased his truck in North Carolina); *id.* at 2312 (Plaintiff Ewing purchased his truck in Wisconsin); *id.* at 2225 (Plaintiff Vanderhulst purchased his truck in California). But the Court previously dismissed all relevant claims for breach of implied warranty under North Carolina, Wisconsin, and California law. ECF 35, PgID 4061, 4073. And therefore, Plaintiffs Deale, Ewing, and Vanderhulst have no claims remaining for breach of implied warranty.

exists. Under U.C.C § 2-314, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *See* Minn. Stat. § 336.2-314; Tex. Bus. & Com. Code Ann. § 2.314; Utah Code Ann. § 70A-2-314. And in Texas, Minnesota and Utah, a manufacturer—like Defendant—may be liable to a "downstream" purchaser for breach of the implied warranty of merchantability. *MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 138 (Tex. 2014) (noting that this principal applies whether the consumer bought the product new or used); *Peterson v. Bendix Home Sys., Inc.,* 318 N.W.2d 50, 52 (Minn. 1982); *Ernest W. Hahn, Inc. v. Armco Steel Co.*, 601 P.2d 152, 156 (Utah 1979). Thus, the first element is satisfied.

Next, a reasonable jury could find that the defect breached the implied warranty. The implied warranty of merchantability "is breached on a showing that a product is defective to a normal buyer making ordinary use of the product." *Driscoll*, 785 N.W.2d at 816; *see also Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999) (acknowledging that a defect may form the basis of a claim for breach of implied warranty); *Christopher v. Larson Ford Sales, Inc.*, 557 P.2d 1009, 1012 (Utah 1976). Because some of the EGR coolers caught fire, a reasonable jury could infer that the product was defective to a normal buyer making ordinary use of the product. *See Alexander*, 822 F.2d at 1435 (explaining that the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party"). Specifically, a jury could conclude that the defect—which was present in as many as one hundred percent of the vehicles, ECF

22-3, PgID 2770—caused a risk of fire that was too high for ordinary use of the vehicle. And since the defect forms the basis of the diminution-in-value claim, Plaintiffs presented evidence that the breach caused the alleged harm. Because a reasonable jury could find that the defect breached the warranty and that it caused harm, Defendant is not entitled to summary judgment.

Defendant nevertheless argued that Plaintiffs "have no evidence to show the alleged defect actually existed in their own trucks." ECF 71, PgID 4743. But Plaintiffs presented evidence that Defendant estimated "100%" of the recalled Class Vehicles contained the EGR Cooler Defect. ECF 22-3, PgID 2770. Based on that evidence, a reasonable jury could find that the EGR Cooler in every Class Vehicle was defective, and that the vehicles manufactured with the defect and sold to the Plaintiffs breached the implied warranty. Thus, whether the defect was present in Plaintiffs' cars—and ultimately whether Defendant breached the implied warranty—is a genuine issue of material fact for the jury to decide.[3] The Court will therefore deny summary judgment on the claims of Plaintiffs Gouker, Gulbranson, and Mault for breach of implied warranty.

## UNJUST ENRICHMENT

Defendant is entitled to summary judgment on Plaintiffs' unjust enrichment claims. The law of the place of contracting governs Plaintiffs' claims for unjust

---

[3] Loss of coolant is also a warning sign of the EGR Cooler Defect. ECF 22-3, PgID 2771. And Plaintiffs Gouker and Mault experienced a coolant loss. ECF 78-12, PgID 5850; ECF 78-16, PgID 5923. A jury could thus infer that Plaintiffs Gouker and Mault's vehicles were defective.

enrichment. *Stalker v. MBS Direct, LLC*, No. 10-11355, 2012 WL 6642518, at *16 (E.D. Mich. Dec. 20, 2012). Because the contract for sale occurred where Plaintiffs bought their vehicles, the Court will apply the law of the place where Plaintiffs bought their vehicles.

Since the Court already dismissed the unjust enrichment claims of Plaintiffs Ewing, Gouker, and Vanderhulst, only the claims of Plaintiffs Deal, Gulbranson, and Mault for unjust enrichment remain.[4] And North Carolina, Minnesota, and Utah law govern those respective claims. *See* ECF 22, PgID 2256, 2268, 2285 (showing they bought their trucks in North Carolina, Minnesota, and Utah). But in those States, an express contract precludes recovery under a theory of unjust enrichment. *Atl. & E. Carolina Ry. Co. v. Wheatly Oil Co.*, 163 N.C. App. 748, 753 (N.C. App. 2004); *Thatcher v. Lang*, 462 P.3d 397, 407 (Utah App. 2020); *Lansing v. Concrete Design Specialties, Inc.*, No. A05-1543, 2006 WL 1229638, at *5 (Minn. Ct. App. May 9, 2006). Thus, since the three Plaintiffs with existing unjust enrichment claims have an express contract with Defendant in the form of the express warranty, ECF 71-12, Plaintiffs Deal, Gulbranson, and Mault may not proceed on their claims for unjust enrichment.[5]

---

[4] Wisconsin, Texas, and California law govern the unjust enrichment claims of Plaintiffs Ewing, Gouker, and Vanderhulst. ECF 22, PgID 2225, 2281, 2312 (showing they bought their trucks in Wisconsin, Texas, and California respectively). But the Court previously dismissed their claims for unjust enrichment under Wisconsin, Texas, and California law. ECF 35, PgID 4073.

[5] Although the Court dismissed the claims for unjust enrichment that were brought under Wisconsin, Texas, and California law, *supra,* each of those States also precludes unjust enrichment claims when the parties have an express contract. *Mohns Inc. v. BMO Harris Bank Nat'l Ass'n*, 395 Wis.2d 421, 450 (Wis. App. 2021);

## MAGNUSON-MOSS WARRANTY ACT ("MMWA")

Defendant is entitled to summary Judgment on Plaintiff Ewing's MMWA claim. To bring a claim under the MMWA, a plaintiff must have a viable State-law warranty claim. *See, e.g., McKee v. Gen. Motors LLC*, 376 F. Supp. 3d 751, 760 (E.D. Mich. 2019). Because the Court dismissed Plaintiff Ewing's only remaining State-law warranty claim, *supra*, Plaintiff Ewing's MMWA claim fails. Summary judgment is thus granted as to Plaintiff Ewing's MMWA claim. But the Court will deny summary judgment as to the remaining Plaintiffs' MMWA claims because, as discussed above, each has a viable State-law claim.

## LIMITATIONS PERIOD

Defendant argued that Plaintiffs Deale, Gouker, Gulbranson, and Vanderhulst's claims are time-barred. ECF 71, PgID 4745–46.[6] But Defendant is not entitled to summary judgment because the limitations period can be tolled if Defendant fraudulently concealed the defect. *See, e.g., Britton v. Girardi*, 185 Cal. Rptr. 3d 509, 519 (Cal. App. 2015); *Jones v. BMW of N. Am., LLC*, 1:20-cv-00057, 2020 WL 5752808, at *5 (M.D. N.C. Sept. 25, 2020); *Click v. Gen. Motors LLC*, 2:18-CV-455, 2020 WL 3118577, at *14 (S.D. Tex. Mar. 27, 2020); *Williamson v. Prasciunas*,

---

*Ledig v. Duke Energy Corp.*, 193 S.W.3d 167, 176 (Tex. App. 2006); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (Cal. App. 2010).

[6] Plaintiff Ewing has no remaining claims and whether his claims are time-barred is inapposite.

661 N.W.2d 645, 650 (Minn. Ct. App. 2003); *State ex rel. Susedik v. Knutson*, 52 Wis.2d 593, 596 (Wis. 1971).

Whether Defendant fraudulently concealed the defect is a genuine issue of material fact because Plaintiffs presented evidence such that a reasonable jury could find there was fraudulent concealment. *See Anderson*, 477 U.S. at 248. Fraudulent concealment tolls the limitations period if: (1) the defendant concealed the conduct constituting the cause of action; (2) the defendant's concealment prevented the plaintiff from discovering the cause of action within the limitations period; and (3) the plaintiff exercised due diligence in discovering the cause of action. *See, e.g., In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 537−38 (6th Cir. 2008).

Here, Plaintiffs presented evidence that Defendant knew of the EGR thermal fatigue defect as early as 2016, ECF 78-3, PgID 5622; ECF 78-5, PgID 5629, that Defendant opened an investigation into the issue in January 2017, ECF 78-5, PgID 5632, and that Defendant did not disclose the defect until late 2019, *see* ECF 71-3, PgID 4756. Because Defendant knew of the defect for at least three years before disclosing it, a reasonable jury could infer that Defendant concealed the defect. *See Scrap* Metal, 527 F.3d at 537−38 (noting that fraudulent concealment requires showing that the defendant concealed the conduct constituting the cause of action). And because Defendant did not disclose the information until later in the year of 2019, a reasonable jury could infer that Defendant's concealment prevented Plaintiffs from discovering the cause of action within the limitations period. *See Scrap* Metal, 527 F.3d at 537−38 (noting that fraudulent concealment requires showing that the

defendant's concealment prevented the plaintiff from discovering the cause of action within the limitations period). Moreover, Plaintiffs each requested a replacement part and initiated litigation within one year of the recall. ECF 1, 19; *Briggs, et al. v. FCA US LLC*, No. 20-cv-13235, ECF 1. A reasonable jury could thus conclude that Plaintiffs exercised diligence in discovering the cause of action. *See Scrap* Metal, 527 F.3d at 537−38 (noting that fraudulent concealment requires showing that the plaintiff exercised due diligence in discovering the cause of action). Plaintiffs provided evidence sufficient to raise a genuine issue of material fact concerning whether Defendant fraudulently concealed the defect. The Court will deny summary judgment on the limitations issue.

## NOTICE

Each State in which Plaintiffs purchased their vehicles requires notice for breach of warranty claims. *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 789 F. Supp. 2d 1148, 1154–55 (D. Minn. 2011); *Everett v. TK-Taito*, LLC, 178 S.W.3d 844, 854–56 (Tex. App. 2005); *Reimschissel v. Russell*, 649 P.2d 26, 27–28 (Utah 1982); *Adkins v. Apple Inc.*, 147 F.Supp.3d 913, 920–21 (N.D. Cal. 2014); *Riley v. Ken Wilson Ford, Inc.*, 109 N.C. App. 163, 169 (N.C. App. 1993). Defendant argued that Plaintiffs did not give adequate pre-suit notice for their breach of warranty claims. ECF 71, PgID 4743−44. But Defendant is not entitled to summary judgment on the issue of notice.

24

I.    <u>Plaintiff Gulbranson</u>

As to Plaintiff Gulbranson, Defendant is not entitled to summary judgment on the issue of notice because, under Minnesota law, lack of pre-suit notice is not fatal to a plaintiff's claims. *City of Wyoming v. Procter & Gamble Co.*, 210 F. Supp. 3d 1137, 1157–58 (D. Minn. 2016). Dismissal based on lack of notice is "inappropriate" unless Defendant "show[s] that it was prejudiced by being deprived of a seasonable opportunity to remedy the problem." *Francis v. Gen. Motors, LLC*, 504 Supp. 3d 659, 679 (E.D. Mich. 2020) (citing *City of Wyoming*, 210 F. Supp. 3d at 1157–58 (quoting Minn. Stat. § 336.2-607, U.C.C. cmt. 4)). Defendant offered no evidence that it faced prejudice by the alleged insufficient notice. *See* ECF 71, 84. In *Procter & Gamble*, the court found that since "Defendants have been locked in litigation . . . in courts all across the country" it could not maintain that it was prejudiced by a lack of notice. *Procter & Gamble Co.*, 210 F. Supp. 3d at 1158. Similarly, Defendant here was not prejudiced by Plaintiff Gudbranson's alleged lack of notice because Defendant was already litigating the same claims with other Plaintiffs. *Compare* ECF 1 *with* ECF 22 (showing that Plaintiff joined the lawsuit more than four months after it was filed). Summary judgment on the issue of notice is denied as to Plaintiff Gulbranson.

II.   <u>Plaintiffs Deale and Gouker</u>

Defendant is not entitled to summary judgment on the issue of notice as to Plaintiffs Deale and Gouker because a fact issue exists concerning "whether the notice given was sufficient to alert the defendant to the problems with their particular vehicles." *Francis*, 504 Supp. 3d at 679. Under Texas law, Defendant has notice if it

"has actual knowledge" or, "from all the facts and circumstances known" "at the time in question, [Defendant] has reason to know that [the defect] exists." *Galaxy Powersports, LLC v. Benzhou Vehicle Indus. Grp. Co., Ltd.*, No. 10-cv-360, 2012 WL 13024094, at *5 (N.D. Tex. Sept. 27, 2012). Similarly, under North Carolina law, "when the applicable policies behind the notice requirement have been fulfilled . . . the plaintiff is entitled to go to the jury on the issue of seasonable notice." *Riley*, 109 N.C. App. at 169. "The most important policy behind the notice requirement is to allow the seller the opportunity to cure the breach." *Id.* Here, by the time Plaintiffs sued, Defendant knew that as many as one hundred percent of the class vehicles were defective. Indeed, Defendant was aware of this fact even before Plaintiffs were aware of it. ECF 22-3, PgID 2770; ECF 78-3, PgID 5622; ECF 78-5, PgID 5629; ECF 71-3, PgID 4756. A jury could therefore find that Defendant had actual notice, a finding that would satisfy Texas law. Moreover, because Defendant knew of the defect since 2016 and alerted Plaintiffs of the defect, a jury could find that Defendant had sufficient opportunity to cure the breach, and that finding would satisfy the policy aims behind the notice requirement, satisfying North Carolina law. Summary judgment on the issue of notice is therefore denied as to Plaintiffs Deale and Gouker.

III.   <u>Plaintiff Mault</u>

A fact issue exists concerning whether Plaintiff Mault gave pre-suit notice. Utah Law requires notice "within a reasonable time." Utah Code Ann. § 70A-2-607(3)(a). There is little case law on what constitutes sufficient notice under Utah

26

law. Two federal district courts in Utah held that "Section 70A-2-607 places an affirmative burden on a would-be plaintiff prior to his filing suit, rather than merely requiring that a defendant be on notice of a breach." *Callegari v. Blendtec, Inc.*, No. 2:18-CV-308, 2018 WL 5808805, at *6 (D. Utah Nov. 6, 2018); *see also Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271, 1290 (D. Utah 2020). But the Utah Supreme Court "used the filing of the complaint as the date on which notice was provided to determine if notice was timely." *Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043, 1063 (C.D. Cal. 2020) (citing *Mawhinney v. Jensen*, 120 Utah 142, 155 (Utah 1951)). And while the Utah courts have not provided much guidance on how to interpret Section 70A-2-607, they are clear that "[w]hat constitutes 'a reasonable time'" under the statute "is usually a question of fact to be determined from the circumstances of each case." *Christopher*, 557 P.2d at 1012.

A jury could conclude that Plaintiff Mault satisfied his burden requiring pre-suit notice. The record shows that Plaintiff Mault sent a notice letter on August 20, 2020—one week before filing the lawsuit. ECF 25-4. What is more, Plaintiff Mault contacted the FCA-authorized dealership for a repair well before filing the lawsuit. *Compare* ECF 1; *Briggs, et al. v. FCA US LLC*, Case No. 2:20-cv-13235 (E.D. Mich.) *with* ECF 78, PgID 5607. And Defendant had actual knowledge of the breach and defect. ECF 22-3, PgID 2770. Viewing the facts in the light most favorable to Plaintiff Mault, a jury could conclude that Plaintiff Mault gave sufficient pre-suit notice.

Similarly, a jury could conclude Plaintiff Mault gave notice within a reasonable time. Defendant initiated the recall in October 2019, ECF 71-3, PgID 4756, and

Plaintiff Mault sent notice about ten months later, ECF 25-4. A jury could find that giving Defendant notice ten months after Plaintiff's discovery of the defect was reasonable. *See* Utah Code Ann. § 70A-2-607(3)(a); *see also Mawhinney*, 120 Utah at 155 (finding notice three years after the defect was unreasonable). Summary judgment on the issue of notice is denied as to Plaintiff Mault.

IV.   Plaintiff Vanderhulst

The Court will also deny summary judgment on the issue of notice as to Plaintiff Vanderhulst because Defendant had adequate notice from Plaintiff Vanderhulst. California law provides that notice of a defect is not required when a vehicle was not purchased from the manufacturer. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Prac., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1180 (C.D. Cal. 2010) (notice is not required in action against a manufacturer and by purchasers "against [a] manufacturer[ ] with whom they have not dealt") (quoting *Greenman v. Yuba Power Prods.*, 59 Cal.2d 57 (1963))). Because Plaintiff Vanderhulst did not purchase his vehicle directly from Defendant, ECF 78-19, PgID 6000, he was not required to give Defendant notice. Summary judgment on the issue of notice is denied as to Plaintiff Vanderhulst.

## CONCLUSION

In accord with the analysis and rulings set forth above, the Court will partially grant Defendant's motion for summary judgment. The Court will grant summary judgment on Plaintiff Ewing's breach of contract and Magnuson-Moss Warranty Act claims.  And the Court will grant summary judgment on Plaintiffs' unjust enrichment

claims. The Court will deny summary judgment on the issues of standing, mootness, limitations, and notice. The Court will deny summary judgment on Plaintiffs Deale, Gouker, Gulbranson, Mault, and Vanderhulst's breach of contract and Magnuson-Moss Warranty Act claims. The Court will deny summary judgment on Plaintiffs Gouker, Gulbranson, and Mault's breach of implied warranty claims.

Last, the Court will require the parties to submit a joint status report detailing what remains in the litigation, a proposed schedule, their willingness to participate in alternative dispute resolution, and an anticipated timeline of when they will be prepared to engage in meaningful mediation.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion for summary judgment for claims of Plaintiffs who experienced no fires in their vehicles [71] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims for unjust enrichment are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff Ewing's claims for breach of contract and violation of the Magnuson-Moss Warranty Act are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the parties **SUBMIT** the above-described joint status report **no later than March 31, 2024**.

**IT IS FURTHER ORDERED** that a status conference is **SET** for **April 3,**

**2024 at 11:00am**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 4, 2024